# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

1. Your Affiant, Special Agent Erik Bass, with the United States Department of Justice, Federal Bureau of Investigation (FBI), am currently assigned to the Caribbean Corridor Strike Force (CCSF), San Juan Division. I have been an FBI Special Agent since July 2011. As a Special Agent of the FBI, I am authorized to investigate violations of the laws of the United States, and I am a law enforcement officer with authority to execute arrest and search warrants under the authority of the United States. My training consisted of 21 weeks of New Agent Training classes during which I received instruction on various aspects of federal investigations. During my training to become a Special Agent, I have studied a wide variety of Criminal and National Security investigations. Since my assignment with the CCSF, I have participated in the investigations involving Transnational Organized Crime in the District of Puerto Rico. Prior to being assigned to the CCSF, I was assigned to the Santa Clara County Violent Gang Task Force (SCCVGTF), San Francisco Division, San Jose Resident Agency. Since my assignment with the SCCVGTF, I participated in the investigation of violent and reactive crime, Hispanic gangs, Mexican Drug Trafficking Organizations, and Asian organized crime in the Northern District of California.

2. As a Special Agent, I am responsible for enforcing Title 46, United States Code 70503, Possession with Intent to Distribute a Controlled Substance Onboard a Vessel Subject to Jurisdiction of the United States. While employed in my current assignment, I have participated in the execution of arrest and search warrants involving offenses pertaining to the distribution of illegal narcotics. I have participated in numerous federal search warrants and arrests involving alleged narcotics trafficking, and I have participated in numerous investigations of narcotics traffickers.

3. Prior to becoming a Special Agent for the FBI, I attended the Sarasota Criminal Justice Academy and received my Florida state law enforcement certification. I worked for approximately two (2) years with the North Port Police Department and five (5) years with the

Sarasota Police Department. In these positions, I conducted uniform neighborhood patrol, responded to calls for service, and made misdemeanor and felony arrests. While at the Sarasota Police Department, I was a member of the departments' Street Crime Unit where I conducted surveillances, undercover and decoy operations, fugitive investigations, narcotics investigations, and gang investigations. I also received formal training in narcotics and dangerous drug investigations, current drug trends, airport narcotics investigations, and clandestine laboratory investigations. I received a Bachelor of Science Degree from Appalachian State University.

4. I have interviewed drug dealers, drug users, and knowledgeable confidential informants about the lifestyles, appearances, and habits of drug dealers and users. I have become familiar with the manner in which narcotics traffickers smuggle, package, transport, store and distribute narcotics, as well as how they collect and launder drug proceeds. I am also familiar with the manner in which narcotics traffickers use telephones, cellular telephone technology, intentionally vague language, coded communications and slang-filled conversations, false and fictitious identities, and other means to facilitate their illegal activities and to thwart law enforcement investigations. I have had training on, and discussions with other law enforcement personnel about the packaging and preparation of narcotics, the distribution methods of illegal narcotics traffickers, and the security measures that narcotics traffickers often employ. I have also examined documentation of various methods by which cocaine, methamphetamine, marijuana, and other illicit drugs are smuggled, transported and distributed. I have participated in surveillance of narcotics traffickers. During surveillance, I have personally observed narcotics transactions, counter-surveillance techniques, and the ways in which narcotics traffickers conduct clandestine meetings. I have also participated in investigations that involved the interception of wire communications.

5. Because of my personal participation in this investigation, and because of information provided to me by other agents and officers, and my personal observations, I am familiar with the facts and circumstances of this investigation. My experience in investigating drug offenders, my education, my conversations with senior drug agents and chemists, and my specialized

training formed a basis of the opinions and conclusions set forth below which I drew from the facts set forth herein.

## SUMMARY OF THE INVESTIGATION

6. On or about October 29, 2015, a Maritime Patrol Aircraft (MPA) located go fast vessel (GFV) operating in international waters approximately 30NM SE of San Andreas Island, CO. United States Coast Guard (USCG) District 7 (D7) assumed Tactical Control (TACON) of RFA LYME BAY and diverted for intercept. After the MPA flew low enough to be detected, the aircraft crew reported observing the subjects on board the vessel jettisoning 11 packages and fuel barrels while heading south between 35-45 knots. While the subjects were throwing the packages overboard, the MPA crew observed a cloud of white powder that appeared to escape from one of the packages. Based on the size and shape of the packages, the MPA crew reported that they believed them to contain contraband. The MPA also observed what was believed to be a Costa Rica flag painted on the port bow of the go fast.

7. A helicopter from the LYME BAY was deployed to intercept the vessel. Once it was on scene, the go fast became compliant and went dead in the water. While a boarding team from the LYME BAY was enroute, the helicopter had to return to the ship to refuel. However, two different MPA's maintained constant visual sight of the go-fast until the helicopter could return. A small boat from the LYME BAY carrying a U.S. Coast Guard (USCG) Boarding Team later arrived on scene. The Boarding Team commenced Right to Approach (ROA) questioning. The master claimed Costa Rican nationality for the vessel but provided no registration paperwork. The Boarding Team reported no further indicia of nationality. The government of Costa Rica was approached to either confirm or deny vessel registry. Costa Rica

responded that it could not confirm nor refute the registry of the suspect vessel. The vessel was determined to be one without nationality.

8. The USCG Boarding Team boarded the vessel. The 03 Persons on Board were removed for safety concerns. The Boarding Team conducted IONSCAN swipes of the vessel, getting positive results for the presence of cocaine on multiple surfaces, including the transom, throttles, port and starboard rail, 55 gallon fuel drums and a bench. Furthermore, all three of the subjects' hands and clothes tested positive for the presence of cocaine. Additional narcotics were not located on the boat. The vessel was found to be taking on water and was determined to be unsuitable to tow. The vessel was eventually destroyed as a hazard to navigation.

9. The individuals on-board the GFV were identified as: Jose REYES-VALDIVIA, Wilfredo El LIS BOLIVAR, and Jeffri DAVILA-REYES. All three individuals were transferred to a Coast Guard Cutter, and will be transferred to U.S. Naval Base Guantanamo Bay, Cuba. From there, they will be taken into custody by the FBI and transported directly to Puerto Rico, which will be the first place they enter the U.S. subsequent to the commission of the above said offense.

10. In my training, experience, and facts concerning this investigation, I believe that sufficient probable cause exists to show that there is material evidence present of a commission of violations of United States federal laws, to wit: Title 46 United States Code 70503, possession with intent to distribute a controlled substance onboard a vessel subject to the jurisdiction of the United States.

I hereby declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

_____
**ERIK BASS**
Special Agent
Federal Bureau of Investigation

Subscribed and sworn before me on the 9th day of November 2015.

_____
**HONORABLE CAMILLE L. VÉLEZ-RIVÉ**
UNITED STATES MAGISTRATE JUDGE